UNITED STATES DISTRICT COURT
DISTRICT COURT OF RHODE ISLAND

CRYSTAL BENEVIDES,

    Plaintiff,

And

MUTUEL/GAMING CLERKS UNION OF RHODE
ISLAND, LOCAL 334, A/W SERVICE
EMPLOYEES INTERNATIONAL UNION, by and
through its President, JOSEPH MARCIANO, and its
Secretary Treasurer, JOANNE MOITOZA,

    An Interested Party,

v.

ANN CLAIRE ASSUMPICO, in her capacity as
Superintendent of the Rhode Island State Police,
TIMOTHY ALLEN, JR., in his capacity as Officer in
Charge of the Rhode Island State Police Gaming
Enforcement Unit, ROBERT LAURELLI, in his
capacity as a Rhode Island State Police Detective and
Member of the Rhode Island State Police Gaming
Enforcement Unit, RHODE ISLAND STATE
POLICE, RHODE ISLAND STATE POLICE
GAMING ENFORCEMENT UNIT, RHODE
ISLAND DEPARTMENT OF BUSINESS
REGULATION and UTGR, INC., DBA Twin River
Casino,

    Defendants and Interested Parties.

Class Action

Civil Action No.

**VERIFIED COMPLAINT
AND MOTION FOR TEMPORARY RESTRAINING ORDER**

*Introduction*

This is an action for declaratory and injunctive relief against state actors who arbitrarily and without a pre-deprivation hearing caused the 'dismissal' of Crystal Benevides from her

employment at Twin River Casino, ordered her ejection from Twin River as an employee, patron or guest, revoked her employment license and who continue to block her reinstatement. Plaintiff seeks a temporary restraining order against the State Police to enjoin it from enforcing its ejectment order. Plaintiff files this action as a class action for injunctive and compensatory relief on behalf of all those similarly situated.

### *Parties and Jurisdiction*

1. Plaintiff Crystal Benevides ("Benevides") is a resident of Warwick, Rhode Island.

2. Interested Party Mutuel/Gaming Clerks Union of Rhode Island, Local 334, a/w Service Employees International Union ("Local 334") is a labor organization representing certain employees, including Benevides, at Twin River Casino. Local 334 is named by and through its President, Joseph Marciano ("Marciano"), and its Secretary-Treasurer, Joanne Moitoza ("Moitoza").

3. Defendant and Interested Party Ann Claire Assumpico ("Assumpico) is RISP Superintendent and is responsible for the general administration and operation of the State Police. She is sued in her official capacity. Assumpico, at all times relevant hereto, acted under color of state law.

4. Defendant and Interested Party Timothy Allen, Jr. ("Allen") is the Officer in Charge of GEU. He is sued in his official capacity. Allen, at all times relevant hereto, acted under color of state law.

5. Defendant and Interested Party Robert Laurelli ("Laurelli") is a Detective within GEU. He is sued in his official capacity. Laurelli, at all times relevant hereto, acted under color of state law.

6. Defendant and Interested Party Rhode Island State Police ("RISP") is a Division of the Rhode Island Department of Public Safety. RISP, at all times relevant hereto, acted under color of state law.

7. Defendant and Interested Party Gaming Enforcement Unit ("GEU") is a unit within RISP, established pursuant to R.I.G.L. § 42-61.3-1. GEU, at all times relevant hereto, acted under color of state law.

8. Defendant and Interested Party Rhode Island Department of Business Regulation ("DBR") is a state entity established by R.I.G.L. § 42-14-1.

9. Defendant and Interested Party UTGR, Inc. ("UTGR") operates and does business as Twin River Casino. By virtue of a symbiotic relationship with the State of Rhode Island, performance of a law enforcement function and acting in concert with and in furtherance of RISP, GEU, and DBR, UTGR at all times material hereto acted under color of state law.

### *Jurisdiction and Venue*

10. This Court has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and because this matter raises a federal question within the meaning of 28 U.S.C. § 1331.

11. Venue is proper within the District of Rhode Island pursuant to 28 U.S.C. § 1391.

### *Class Action Allegations*

12. Plaintiff brings this action on her own behalf and on behalf of all persons similarly situated, pursuant to FRCP 23(b)(3). Plaintiff seeks certification of a class defined as follows: All employees of UTGR and members of the general public who have been barred from the premises of Twin River Casino pursuant to an ejection order by RISP, GEU or UTGR issued pursuant to R.I.G.L. § 42-61.3-l(g)(5).

13. Plaintiff, on behalf of herself and of the class of similarly situated persons, seeks injunctive relief, compensatory damages, and a declaratory judgment that R.I.G.L. § 42-61.3-1(g)(5) is unconstitutional on its face and as applied. The members of the class are so numerous that joinder of all members is impractical. Plaintiff's claims are typical of the class she seeks to represent. The questions of law and fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Plaintiff's counsel has the resources, experience, and expertise to successfully prosecute this action against Defendants. Counsel knows of no conflicts among any members of the class, or between counsel and any members of the class.

14. There are questions of law and fact common to the class, including but not limited to:

    a) Whether R.I.G.L. § 42-61.3-1(g)(5) deprives class members of their property interest in continued employment at Twin River and their liberty interest to enter the premises at Twin River without procedural due process, because the statute offers no notice or opportunity to be heard and no process to appeal GEU ejection orders;

    b) Whether R.I.G.L. § 42-61.3-1(g)(5) is unconstitutionally vague because it allows the RISP and GEU to eject an individual if the GEU "determines that the person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities."

### *Facts*

15. UTGR operates Twin River Casino in Lincoln, Rhode Island.

16. In or about May 2016, Benevides became employed as a cashier at Twin River Casino. Benevides' duties include cashing casino chips for customers.

17. Local 334 and UTGR are parties to a collective bargaining agreement ("CBA") governing terms and condition of employment for mutuel clerks, including Benevides. Pursuant to the CBA, Benevides' employment may only be terminated for just cause.

18. On or about June 29, 2017, a customer tipped Benevides with two $5.00 chips, one of which fell between the customer counter and an adjacent table top. Later that morning, Benevides retrieved the chip and put it aside. At the end of her shift, Benevides displayed the chip to the security camera and placed it in her tip jar.

19. UTGR incorrectly determined that this $5.00 chip was the property of UTGR, rather than a tip, and reported this allegation to Allen and Laurelli.

20. On July 7, 2017, Benevides was arrested and charged with larceny of the $5.00 chip.

21. On July 7, 2017, UTGR wrote Benevides that "[o]n June 7, 2017 [sic] you were arrested by the Rhode Island State Police, Gaming Enforcement Unit. Due to your actions, you are **permanently ejected** from entering the casino." (Emphasis in original). UTGR further informed Benevides that if she returned to the casino, she could be charged with criminal trespass. Exhibit A, attached (hereinafter "Ejection Letter").

22. Twin River issued the Ejection Letter at the direction of and in concert with RISP and GEU, who claim authority to bar employees, patrons and guests from Twin River Casino pursuant to § 42-61.3-1(g). That section empowers GEU to bar from Twin River anyone who

5

"allegedly violated any criminal law, or when the division of state lottery or the casino gaming unit determines that the person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities." There is no pre-determination hearing and no appeal. There are no published standards regarding what "conduct or reputation" is disqualifying, or how such characteristics may "compromise the honesty or integrity" of the casino or interfere with its "orderly conduct."

23. As a condition of employment, Benevides held a Service Employee license from DBR. On July 7, 2017, Allen and Laurelli wrote DBR requesting that Benevides' license be revoked due to the criminal charge. Exhibit B, attached.

24. On July 11, 2017, UTGR, by and though Human Resources Representative Renee D. Bianco, informed DBR that Benevides' employment had been "terminated." Exhibit C, attached (hereinafter "Termination Letter."). UTGR never informed Benevides or Local 334 that her employment had been terminated and, to the contrary, informed them both that Benevides was merely *suspended* pending disposition of the criminal charge.

25. On July 12, 2017, DBR, pursuant to R.I.G.L. § 41-4-9.1, sent a "Notice Letter" to Benevides stating that her Service Employee license was "no longer valid" due to her "termination." Exhibit D, attached.

26. DBR's invalidation of Benevides' Service Employee license was *ultra vires*. DBR has no legal authority to declare a license "invalid." Rather, R.I.G.L. § 41-4-9.1(c) provides that licenses may be "revoke[d] for good cause" only "after a hearing." That section provides:

6

> In determining whether to grant a license pursuant to this section, the division may require the applicant to submit information as to: financial standing and credit; moral character; criminal record, if any; previous employment; corporate, partnership, or association affiliations; ownership of personal assets; and such other information as it deems pertinent to the issuance of the license. The division may reject for good cause an application for a license, and it may suspend or revoke, for good cause, any license issued by it after a hearing held in accordance with chapter 35 of title 42 [the Administrative Procedures Act] and subject to further appeal procedures provided by § 41-2-3.

27. No pre-revocation hearing was offered or provided by DBR.

28. Prosecution of the criminal charge continued in due course. Benevides maintained, through counsel, that the $5.00 chip was a tip and not the property of UTGR.

29. On September 11, 2017, the criminal charge against Benevides was dismissed by the Rhode Island Attorney General due to "insufficient evidence to prove 'property of another' under the larceny statute." Exhibit E, attached.

30. Following dismissal of the criminal charge, Local 334 contacted UTGR to obtain Benevides' reinstatement. UTGR refused to reinstate Benevides, citing the license invalidation by DBR and the ejectment by GEU.

31. On October 19, 2017, Benevides, through counsel, wrote DBR to advise that the criminal charge had been dismissed and asked about the status of her license. Benevides and Local 334 were still unaware of the July 11, 2017, Termination Letter.

32. On November 11, 2017, Local 334 filed a grievance asking UTGR about Benevides' employment status "so that we can take the proper steps needed at the state level." There has been no formal response to the grievance.

33. On November 27, UTGR, by and through Executive Director of Human Resources Jennifer Roberts-Reagan ("Reagan"), notified DBR that it "decided not to terminate

the employment of Cage Cashier Crystal Benevides [but] the termination e-mail went through, but at the time, that was premature." Reagan apologized *to DBR* for the inconvenience. Exhibit F, attached.

34. On November 30, 2017, UTGR notified Benevides, through counsel, that Benevides "has not been terminated" but rather "has not worked ... because she was barred from entering the casino *by ... GEU*." (Emphasis added). UTGR stated that if DBR reactivates Benevides' license and GEU "removes the current ban on Ms. Benevides entering the casino," she could be reinstated—albeit without back pay. Exhibit G, attached.

35. On December 4, 2017, Local 334 advised UTGR that "it is a violation of the CBA to fail to reinstate Crystal or to deny her lost wages...We will continue to try to facilitate a resolution with DBR and RISP, but in the meanwhile, it is clear that Crystal has been effectively terminated, or at least suspended. The Union can file a formal grievance to this effect, or we can process the existing grievance, or just file for arbitration. What's your preference?" UTGR has not responded to this letter.

36. On December 6, 2017, DBR notified Benevides that UTGR told DBR *in July* that she had been terminated. Based on the November 30, 2017 letter retracting the termination, Exhibit G, DBR reinstated Benevides' license retroactive to July 12, 2017.

37. As of December 6, 2017, UTGR and DBR had no objection to Benevides' reinstatement. All that remained to reinstate Benevides was withdrawal of the GEU Ejection Letter.

38. On multiple occasions during October, November and December, 2017, Benevides, through counsel, called and wrote Allen, GEU, and RISP legal counsel Paul Alexander ("Alexander") to advise them that the criminal charge had been dismissed (which,

upon information and belief, they already knew) and to request withdrawal of the Ejection Letter. Allen, GEU and Alexander failed and refused to respond to the calls and letters.

39. Upon information and belief, since about December 7, 2017, UTGR, for its part, has also attempted to persuade GEU to withdraw the Ejection Letter. GEU has refused.

40. As a proximate result of Defendants' actions, Benevides has suffered lost wages and benefits, as well as emotional distress.

41. Benevides has been caused to suffer and will continue to suffer immediate and irreparable harm as a result of the refusal by RISP, GEU, Assumpico, Allen and Laurelli to withdraw the Ejection Letter. UTGR will not reinstate Benevides unless the Letter is withdrawn, but the Letter was void *ab initio* and RISP, GEU, Assumpico, Allen and Laurelli refuse to provide notice or an opportunity to be heard and refuse to withdraw the Letter or even communicate with Benevides' counsel.

42. UTGR is scheduled to conduct a Job Fair on December 19, 2017, whereby Benevides would otherwise be permitted to bid for her work schedule for the six (6) months following January 9, 2018. If the GEU's ejection order remains in effect on December 19, Benevides will not be able to participate in the bid and will therefore lose her right to bid on desirable positions, schedules and days off for a six-month period. Such impairment of Benevides' seniority rights constitutes immediate and irreparable harm within the meaning of Federal Rule of Civil Procedure ("FRCP") 65(b). *See Ardito v. City of Providence*, 263 F. Supp. 2d 358, 372 (D.R.I. 2003); *Bertoncini v. City of Providence*, 767 F. Supp. 1194, 1197 (D.R.I. 1991). As this Court held in *Ardito*:

> Moreover, even if the plaintiffs were assured a position in a future academy, it would be impossible to restore their lost seniority rights or to attach a dollar value to that loss. The evidence shows that seniority affects job assignments, shift

assignments, vacation selection, promotions and layoffs. Since it would be virtually impossible for the Court to restore their seniority, or to measure its value, the plaintiffs, if successful, will be irreparably harmed if they are excluded from the 61st Academy.

43. The Ejection Letter and license invalidation are widely known within Twin River Casino, and continue to damage Benevides' reputation and standing in the community, notwithstanding dismissal of the criminal charge.

44. Plaintiff is without an adequate remedy at law.

45. The balance of equities favor issuance of an injunction.

*Claims for Relief*

### Count I: 42 U.S.C. § 1983

**Deprivation of Fifth and Fourteenth Amendment Rights
By RISP, GEU, Assumpico, Allen, Laurelli and UTGR**

46. Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

47. R.I.G.L. § 42-61.3-1(g) provides in relevant part:

[M]embers of the gaming enforcement unit shall have the power to enter the premises of a gaming facility licensed by the division of state lottery at any time, to the extent permissible under the constitutions of the state of Rhode Island and the United States of America, through its investigators and law enforcement personnel at any time without notice for the following purposes...

(5) To eject, exclude or authorize the ejection or exclusion of a person from a gaming facility if the person allegedly violated any criminal law, or when the division of state lottery or the casino gaming unit determines that the person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities...

48. Chapter 42-61.3-1, on its face and as applied, denies Benevides and those similarly situated Due Process of Law because it does not provide a procedure by which an

individual who has been ejected from a gaming facility, by order of the GEU, may receive reasonable notice or an opportunity to be heard.

49. Chapter 42-61.3-1, on its face and as applied, denies Benevides and those similarly situated Due Process of Law because there are no meaningful standards to determine whether a "person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities."

50. By the foregoing acts and omissions, Defendants' conduct violates the right of Plaintiff and each class member to procedural due process secured by the Fifth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiff prays as hereinafter set forth.

## Count II
### Declaratory Judgement Regarding § 42-61.3-1 et seq.
### Procedural Due Process

51. Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

52. Chapter 42-61.3-1, on its face and as applied, denies Benevides and those similarly situated Due Process of Law because it does not provide a procedure by which an individual who has been ejected from a gaming facility, by order of the GEU, may receive reasonable notice or an opportunity to be heard

53. There exists an actual controversy regarding the constitutionality of § 42-61.3-1(g)(5)

WHEREFORE, Plaintiff prays as hereinafter set forth.

## Count III
### Declaratory Judgement Regarding § 42-61.3-1 et seq.
### Vagueness

54. Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

55. There exists an actual controversy regarding the constitutionality of § 42-61.3-1(g)(5).

56. Section 42-61.3-1, on its face and as applied, denied Benevides and those similarly situated Due Process of Law because there are no meaningful standards to determine whether a "person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities."

57. A vague statute denies fair notice of the standard of conduct to which a citizen is held accountable. A statute is void for vagueness "if it is an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory and overzealous enforcement." *See Gregory v. City of Chicago*, 394 U.S. 111 (1969) (Black, J., concurring).

58. Section 42-61.3-1(g)(5)'s empowerment of GEU to expel individuals from Twin River because they "allegedly violated any criminal law, or when the division of state lottery or the casino gaming unit determines that the person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities" is unconstitutionally vague and an unlawful, unrestricted delegation of power.

WHEREFORE, Plaintiff prays as hereinafter set forth.

## Count IV
### Declaratory Judgement Regarding § 41-4-9.1
### Procedural Due Process – DBR

59. Plaintiff repeats and incorporates each and every allegation in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

60. DBR asserts that it may declare a license issued pursuant to R.I.G.L. § 41-4-9.1 "invalid" without first conducting a pre-deprivation hearing, notwithstanding § 41-4-9.1(c), which prescribes that licenses may be "revoked" after a hearing, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

61. The availability of a post-deprivation hearing would not mitigate the Constitutional violation because "in situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation remedy. See, e.g., *Cleveland Board of Educ. V. Loudermill,* 470 U.S. 532,542 (1985).

62. By the foregoing acts and omissions, DBR's conduct violates the right of Plaintiff and each class member to procedural due process secured by the Fifth and Fourteenth Amendments to the United States Constitution

WHEREFORE, Plaintiff prays as hereinafter set forth

### *Prayer for Relief*

Plaintiff prays that this Honorable Court:

a) Certify the action as a Class Action.

b) Enter a Declaratory Judgement that § 42-61.3-1(g)(5), purporting to authorize the RISP and/or GEU to issue a ejectment order, is unconstitutionally void for vagueness pursuant

to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

c) Enter a Declaratory Judgement that § 42-61.3-1(g)(5), purporting to authorize the RISP and/or GEU to issue a ejectment order, denies citizens procedural due process pursuant to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

d) Issue a Temporary Restraining Order enjoining RISP, GEU, Assumpico, Allen, Laurelli and UTGR from issuing or enforcing an ejection order against Plaintiff, and directing UTGR to reinstate Plaintiff.

e) Issue a preliminary and permanent injunction enjoining RISP, GEU, Assumpico, Allen, Laurelli and UTGR from issuing or enforcing any ejection orders.

f) Issue a Declaratory Judgment that DBR may not declare a Service Employee license "invalid" without first conducting a pre-deprivation hearing in accordance with the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States and RIGL 41-4-9.1(c).

g) Award Plaintiff and plaintiff class compensatory damages according to proof.

h) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

**PLAINTIFF CRYSTAL BENEVIDES
and INTERESTED PARTY LOCAL 334**

By their attorney,

_____
Marc Gursky, Esq. (#2818)
GURSKY|WIENS Attorneys at Law, Ltd.
1130 Ten Rod Road, Suite C-207
North Kingstown, RI 02852
Tel: (401) 294-4700
Fax: (401) 294-4702
mgursky@rilaborlaw.com

*Certification of Notice*

In accordance with FRCP 65(b)(1)(B), the undersigned certifies that a copy of this Verified Complaint and Motion for a Temporary Restraining Order was sent by electronic mail on December 18, 2017 to Paul L. Andrews, Esq., Chief Legal Counsel of the Rhode Island Department of Public Safety, Michael Chittick, Legal Counsel to UTGR, and Sara Tindell-Woodman, Legal Counsel to DBR.

_____
Marc Gursky, Esq.

## *Verification*

I declare under penalty of perjury that:

1. I am President of Local 334, Interested Party in this action, and am familiar with the facts herein.

2. I have read the foregoing Verified Complaint and Motion for Temporary Restraining Order. The allegations contained herein are true and accurate to the best of my knowledge, information and belief.

_____
Joseph Marciano

Sworn before me this 18th day of December, 2018.

_____
Notary Public
Comm Expires: 6/17/21