## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| _____ | ) | |
| CRYSTAL BENEVIDES, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:17-cv-585-MSM-LDA |
| | ) | |
| ANN CLAIRE ASSUMPICO, | ) | |
| In her capacity as Superintendent of the | ) | |
| Rhode Island State Police, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This is a federal question action for declaratory relief,[1] brought by a former cashier at the Twin Rivers Casino ("Casino") in Lincoln, Rhode Island, against the Rhode Island State Police ("RISP"), the Gaming Enforcement Unit of the RISP ("GEU"), the Rhode Island Department of Business Regulation ("DBR"), and various officials of those entities, sued in their official capacities. Ms. Benevides is joined in the lawsuit by her union, the Mutuel/Gaming Clerks Union of Rhode Island, Local 334 ("Union"). Liability is asserted under 42 U.S.C. § 1983, for a violation of civil

---

[1] While the original complaint (ECF No. 1) sought damages, the Amended Complaint (ECF No. 5) seeks declaratory relief only. It asks in its remedy portion for compensatory damages, but the only parties sued are state entities and administrators sued only in their official capacities. Damages are therefore precluded. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

1

rights by a state actor.  Ms. Benevides challenges the loss of her gaming license for a period of about five months because of a supposed termination of her employment which resulted in her exclusion from the Casino.  The lawsuit originally named as a defendant UTGR, the owner and operator of the Casino, but UTGR was dismissed by stipulation.  (ECF No. 35.)

Rhode Island General Laws § 42-61.3-1 establishes the GEU and invests it with the authority to regulate gaming and enforce the gaming laws generally. Specifically relevant to this case, it provides that the GEU may exclude a person in two circumstances:  (a) if the person has "allegedly violated any criminal law," or (b) when "[a] person's conduct or reputation is such that his or her presence within the gaming facility may compromise the honesty and integrity of casino gaming activities or interfere with the orderly conduct of casino gaming activities." R.I.G.L.  § 41-4-9.1 charges DBR with the responsibility for licensing both the gaming entity and its individual employees, and provides that it may refuse, suspend, or revoke a license for "good cause," after a hearing held in accordance with the Administrative Procedure Act, R.I.G.L.  § 42-35-1 *et seq.*

The primary thrust of the lawsuit is the claim by Ms. Benevides and the Union that the portion of § 42-61.3-1 that permits the revocation of a license for conduct "compromis[ing] the honesty and integrity of casino gaming activities or interfer[ing] with the orderly conduct of casino gaming activities" is unconstitutional both on its face and as applied, violative of due process, because it is vague and lacks standards, and does not provide for a pre-deprivation hearing.  They also challenge as violating

procedural due process DBR's invalidation of a cashier's license pursuant to § 41-4-9.1, without an opportunity for a pre-deprivation hearing.

# I.    BACKGROUND

The incident that sparked this lawsuit occurred on June 29, 2017, at the Casino where Ms. Benevides had been employed for about 13 months. As a cashier, her duties included cashing casino chips. It is undisputed that on that day, Ms. Benevides picked up an errant $5.00 chip and put it aside. She contended it was one of two tips she received and had fallen to the floor. She displayed it to a security camera and placed it in her tip jar.[2] UTGR accused her of larceny and she was arrested and charged on July 7, 2017.

A series of events flowed from the criminal charge:

1. A July 7 letter from UTGR to Ms. Benevides noting the arrest and informing her that she was "permanently ejected" from the Casino. (ECF No. 31-11.)

2. A July 7 letter to DBR from defendants GEU Officers Timothy Allen and Robert Laurelli, recommending that DBR revoke Ms. Benevides' license because of the criminal charge. (ECF No. 31-12.)

3. A July 11, 2017, notice by UTGR to DBR that it had "terminated" Ms. Benevides' employment. (ECF No. 40-10.)

4. A July 12, 2017, "Notice letter" from DBR to Ms. Benevides, informing her that her license had been invalidated due to the termination. (ECF No. 31-13.)

5. On Sept. 11, 2017, the criminal charge was dismissed.

6. On November 27, UTGR notified DBR that its July 11 termination notice was premature and that Ms. Benevides had not been terminated by it but, instead, had been excluded from the Casino by GEU. (ECF No. 31-13.) UTGR asserted

---

[2] There is a dispute over whether Ms. Benevides held the chip up to a security camera before pocketing it, and, if she did, whether it was immediately or upon the end of her shift. This dispute, however, does not affect the Court's disposition of the case.

her reinstatement would occur automatically if GEU removed the exclusion and if DBR reactivated her license.

7. DBR reinstated Ms. Benevides' license, retroactive to July 12, and, on December 19, 2017, the day after this lawsuit was filed, the RISP and GEU withdrew the permanent exclusion order, and Ms. Benevides returned to work.

## II.    STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Fed. R. Civ. P. 56(e) Advisory Committee Notes).  Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)).

## III.    ANALYSIS

The defendants' Motion for Summary Judgment is predicated on jurisdictional challenges and not on the merits of the constitutional claims of vagueness, lack of standards, or the entitlement to pre-deprivation notice and hearing.  Instead, the defendants maintain the claims are non-justiciable under Article III of the United

States Constitution because there is no case or controversy, because the plaintiffs lack standing, and because the claims are moot. If this three-barreled attack succeeds on any one of its thrusts, the Court must grant summary judgment.

"An all-purpose definition of justiciability has never been published because of the 'notorious difficulty' of defining the concept." *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1085 n.34 (11th Cir. 1983) (quoting Marshall, *Justiciability,* in Oxford Essays in Jurisprudence: A Collaborative Work 265, 269 (A.G. Guest ed. 1961)). "Justiciability is of course not a legal concept with fixed content or susceptible of scientific verification. Its utilization is the resultant of many subtle pressures, including the appropriateness of issues for decision . . . and the actual hardship to the litigants of denying them the relief sought." *Poe v. Ullman,* 367 U.S. 497, 508-09 (1960).

However imprecise a definition might be, justiciability requires that there be a real dispute between the parties, "a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." *Poe,* 367 U.S. at 503. Justiciability requires "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Méndez-Núñez v. Fin. Oversight and Mgmt. Bd. for P.R.,* 916 F.3d 98, 111 (1st Cir. 2019). Justiciability involves the related doctrines of case or controversy, standing, and mootness – all of which serve to ensure that a court is attending to an actual dispute, not one which is merely abstract or hypothetical.

## A. Case or Controversy

"Plaintiffs must demonstrate a 'personal stake in the outcome'" to satisfy the threshold requirement of case or controversy under Article III. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). The Supreme Court explained that such a personal stake arises when a plaintiff has either "sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged conduct. *Id.* at 101-02. In *City of Los Angeles*, the Supreme Court held that the plaintiff had failed to present a case or controversy because, even though he had been subjected to illegal police use of force in the past (a chokehold maneuver that the City later deemed improper), he could not present evidence that he was likely to be subjected to the same conduct again in the near future. *Id.* at 111. In actions for declaratory judgment, a case or controversy exists when the plaintiff can show that there is a "substantial controversy" that is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *In re Fin. Oversight and Mgmt. Bd. for P.R.,* 916 F.3d 98, 111 (1st Cir. 2019).

In this case, the plaintiff has already returned to work, her "termination" was nullified retroactively, and her license was re-issued. She has settled or dismissed her claim for damages against UTGR.[3] She is seeking only declaratory relief here,

---

[3] In her Memorandum opposing summary judgment, the plaintiff maintains that she sustained lost wages for which she has not been compensated. (ECF No. 36 at 9.) But the current action does not seek compensation or any monetary damages. The Memorandum does assert that she should be considered a "prevailing party" in order to recover attorneys' fees, *id.* at 9 n.5, but attorneys' fees are not relevant to justiciability.

but there is no indication, much less evidence, that she is in jeopardy of suffering a further injury. As in *City of Los Angeles,* the threat "that the plaintiff will be wronged again" is speculative. *Id.* at 111. "With limited exceptions, . . . issuance of a declaratory judgment deeming past conduct illegal is also not permissible as it would be merely advisory." *Am. Civ. Liberties Union of Mass. v. U.S. Conf. of Cath. Bishops,* 705 F.3d 44, 53 (1st Cir. 2013).

### B. Other Bases

Because the Court finds no case in controversy, it need not spend much time discussing standing and mootness. Briefly, however, the Court also finds that the plaintiff lacks standing and that her claims are moot.

At the outset, Ms. Benevides lacks standing to challenge, either for vagueness or lack of standards, the portion of the statute applying to persons whose conduct threatens the integrity or honesty of casino operations. *See* R.I.G.L. § 42-61.3-1(g)(5). There is no evidence that any action was taken against her under that provision. Instead, it is clear the sanctions were applied because of the criminal charge. Thus, the injury is not fairly traceable to the challenged conduct of the defendant. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 (1982). Committing a crime (or allegedly committing a crime) is clearly

a disqualifying criteria for active licensing under the statute, and thus Ms. Benevides was not subjected to an unclear or arbitrary interpretation of the statute by GEU.[4]

The mootness doctrine ensures that a court's resources are not wasted on disputes that no longer matter, even if there had been a case or controversy at the outset of the litigation. *Am. Civ. Liberties Union of Mass.,* 705 F.3d at 56. "[A] controversy must be "extant at all stages of the review, not merely at the time the complaint is filed." *Id.* at 52 (quoting *Mangual v. Rotger-Sabat,* 317 F.3d 45, 60 (1st Cir. 2003).

> [E]ven if a lawsuit involved a live dispute when the matter was before the district court, should events overtake the case on appeal such that, before the final moment of appellate disposition, the complaining party winds up with all the relief the federal court could have given him, we will say that the suit has become moot and beyond the power of the federal courts to adjudicate. This holds true even if all the parties before us still wish us to render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong.

*Boston Bit Labs v. Baker*, 11 F.4th 3, 8 n.3 (2021) (quoting *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009)). In this case, the loss of license is over and done, Ms. Benevides has been reinstated, and there is no injunctive relief that this Court could order that would "undo" it or rectify it. *See Oakville Dev. Corp. v.*

---

[4] In the absence of a direct injury to itself, an association has standing through its members only if it demonstrates that its members would otherwise have standing to sue in their own right. *Friends of the Earth, Inc. v. Laidlaw Env't Serv.*, 528 U.S. 167, 181 (2000). "The organization must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Ms. Benevides' lack of standing, in the absence of evidence that other members of the Union have standing, deprives the organization as well.

*F.D.I.C.*, 986 F.2d 611, 613 (1st Cir. 1993) (where foreclosure had not been stayed, and occurred, the request for injunctive relief was moot). Ms. Benevides has lost her stake in the case, *Weinstein v. Bradford*, 423 U.S. 147, 148 (1975), and the relief sought would not make a difference to the "legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation)." *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 46 (1st Cir. 2022) (quoting *Boston Bit Labs*, 11 F.4th at 8).[5]

---

[5] Neither of the two exceptions to mootness applies here. The "voluntary cessation" doctrine applies when mootness is based on a party's voluntary cessation of the challenged conduct. The exception serves to prevent a defendant from temporarily changing its policy, thereby mooting the plaintiff's case, when it intends to reinstate the offending policy upon dismissal of the action. *Am.. Civ. Liberties Union of Mass.*, 705 F.3d at 54-55. In this case, the RISP through GEU has adopted a new policy, GO 104R, that establishes pre-deprivation notice and opportunity for a hearing. (ECF No. 14.) The plaintiffs argue that nothing stops the GEU from retracting that new policy if this case were dismissed but there must be more than mere speculation that the offending policy will be reinstated. *Boston Bit Labs*, 11 F.4th at 10. There must be a reasonable expectation that the party will resume the challenged conduct as soon as litigation ends. *Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016). Here, there are no facts put forward to suggest that the change in policy was motivated by anything but good faith and will not remain in place.

The second exception lies to review a challenge to a policy or practice that, although moot, is "capable of repetition yet incapable of review." *Calvary Chapel,* 52 F.4th at 47 (1st Cir. 2022). The plaintiff has not shown that the series of events that led to the license revocation occurs is likely to happen to *her* again. *Oakville Dev.,* 986 F.2d at 615; *Calvary Chapel,* 52 F.4th at 47. *See City of Los Angeles,* 461 U.S. at 105 (not enough that plaintiff might be stopped by police again; there had to be a real threat that he would be stopped, and illegally choked without provocation). In addition, "incapable of review" means that the duration of the challenged action must be so short that a plaintiff would not be able to fully litigate it prior to expiration. *Driver v. Town of Richmond*, 570 F. Supp. 2d 269, 274 (D.R.I. 2008). The situation here is not dissimilar to any wrongful termination action which can be fully litigated.

## IV. CONCLUSION

This action was filed in 2017. Ms. Benevides' license was restored more than six years ago. She seeks only declaratory relief. There is no remedy that the Court can grant to her in this action that she has not already achieved or waived and the dispute between the parties that remains may be one of principle, but it is no longer a case or controversy deserving of judicial resources.

The defendants have requested dismissal for want of jurisdiction in their Motion for Summary Judgment (ECF No. 31) and that request is GRANTED. The case is DISMISSED.

IT IS SO ORDERED:

_____
Mary S. McElroy,
United States District Judge

Date: January   3, 2024

10